Gabriel J. Bassford
1901 W. Madison St.
Apt. 605
Phoenix, AZ 85009
(480) 714-1675
gbassford01@gmail.com

X FILED ___ LODGED
___ RECEIVED ___ COPY
APR 2 4 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DIVISION OF PHOENIX

GABRIEL J. BASSFORD,

Plaintiff,

v.

US DISTRICT COURT OF ARIZONA; UNITED STATES ATTORNEY GENERAL; ARIZONA ATTORNEY GENERAL; JAMES TEILBORG; FRONT WINDOW CLERK (JANE DOE); COURT CLERK KJ (FNU); CLERK HARLEY (LNU); CLERK SUPERVISOR MISSY (LNU); CLERK DOES 1–999; CITY OF MESA; MESA POLICE DEPARTMENT; MESA PROSECUTORS OFFICE; MESA VETERAN COURT; MESA CLERK DOES 1–10, MESA ASSIGNED PUBLIC DEFENDER, MESA JUDICIAL OFFICERS JOHN/JANE DOES; DOMINIC HIGGINS; JUAN GIRALDO; KEVIN BAILEY; STACY GOOD; AUSTIN BROOKS; PAUL HAWKINS; AND JOHN DOES 1-4, inclusive,

Defendants.
_______________________________/

Case No. CV-25-1034-PHX-JAT

**PLAINTIFF'S MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY AND CORRECT APPELLATE FINALITY ORDER**

**NOS 440 – Civil Rights: Other**

Plaintiff respectfully moves for leave to file the attached Notice of Supplemental Authority and Correct Appellate Finality Order concerning Defendant City of Mesa's Motion to Dismiss and Reply.

Good cause exists because Defendant's Reply argues that Plaintiff's state-law malicious prosecution and related public-entity claims are time-barred even assuming the prosecution ended on December 7, 2023. But the State's appeal from the Mesa Municipal Court dismissal remained pending after that date. The Superior Court later affirmed the dismissal in **State v. Bassford, LC2023-000364-001 DT**, by ruling dated October 2, 2024 and electronically filed October 11, 2024. The Superior Court's order states: **"No matters remain pending in connection with this appeal. This is a final order."**

This filing is not intended as a surreply on the merits. It is intended to correct the appellate finality date relied upon in Defendant's Reply and to provide the Court with the order establishing when the State's appeal concluded.

Plaintiff therefore requests leave to file the attached Notice and Exhibit A.

Dated on this 24th day of April 2026.

Respectfully submitted,

*_/s/ Gabriel Bassford_*

Gabriel J. Bassford
Plaintiff Pro Se
gbassford01@gmail.com
1901 W. Madison St.
Apt. 605
Phoenix, AZ 85009
(480) 714-1675

**Attached notice**

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY AND CORRECT APPELLATE FINALITY ORDER

Plaintiff gives notice that the State's appeal in the underlying criminal prosecution did not finally conclude on December 7, 2023. In **State v. Bassford, LC2023-000364-001 DT**, the Maricopa County Superior Court affirmed the Mesa Municipal Court's dismissal of the QT criminal matter. The order is dated October 2, 2024 and was electronically filed October 11, 2024. It states: **"No matters remain pending in connection with this appeal. This is a final order."**

This order is attached as Exhibit A.

This order is relevant because Defendant's Reply relies on December 7, 2023 as the operative termination date. The attached Superior Court appellate order shows the State's appeal remained pending until the final order entered October 11, 2024.

*/s/ Gabriel Bassford*
Gabriel J. Bassford
Plaintiff Pro Se
gbassford01@gmail.com
1901 W. Madison St.
Apt. 605
Phoenix, AZ 85009

(480) 714-1675

# EXHIBIT A

**Superior Court Record Appeal Ruling / Remand**

**State v. Bassford, LC2023-000364-001 DT**

**Filed October 11, 2024**

Clerk of the Superior Court
*** Electronically Filed ***
10/11/2024 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2023-000364-001 DT 10/02/2024

HONORABLE JOSEPH P. MIKITISH

CLERK OF THE COURT
J. Eaton
Deputy

STATE OF ARIZONA

v.

GABRIEL JAVIER BASSFORD (001)

PAUL WARNER HAWKINS

GABRIEL JAVIER BASSFORD
1901 W MADISON ST #605
PHOENIX AZ 85009

JUDGE MIKITISH
MESA MUNICIPAL COURT
MESA MUNICIPAL COURT - COURT ADMINISTRATOR
MESA MUNICIPAL COURT - PRESIDING JUDGE
REMAND DESK-LCA-CCC

RECORD APPEAL RULING / REMAND

Mesa Municipal Court Case No. 2022013398

The State appeals from the Mesa Municipal Court's Judgment granting of the Defendant/ Appellee Gabriel Bassford's (Mr. Bassford) Motion to Dismiss the matter. For the reasons stated below, the Judgment is affirmed.

## I. Background

Mr. Bassford was cited for Criminal Trespass in violation of A.R.S. § 13-1502(A) and for Resisting Arrest in violation of A.R.S. § 13-2508(A)(3) from an incident on March 3, 2022. See Citation Complaint, March 3, 2022. (Complaint). On February 21, 2023, Mr. Bassford filed a Motion to Quash/Dismiss pursuant to A.R.S. § 12-751. See Motion to Quash, 2/21/23. The statute provides that "In any legal action that involves a person's lawful exercise of the right of petition, the right of speech, the freedom of the press, the right to freely associate or the right to

peaceably assemble pursuant to the United States Constitution or Arizona Constitution, the person other than a state actor or an intervenor may file a motion to dismiss or quash the action under this section." A.R.S. §13-1502(A). In response, the State requested a *prima facie* showing pursuant to A.R.S. § 12-751(B). See Request for Prima Facie Showing, March 6, 2023. The statute provides that. "A person who files a motion pursuant to subsection A of this section has the burden of establishing *prima facie* proof that the legal action was substantially motivated by a desire to deter, retaliate against or prevent the lawful exercise of a constitutional right." A.R.S. § 12-751(B).

On March 14, 2023, the Court heard argument on the Motion to Quash/Dismiss. Reporter's Transcript, 3/14/23 (R.T. March) at 1-5. The State argued that before moving forward on the Motion to Quash/Dismiss, Mr. Bassford was required to make a *prima facie* showing that Officer Higgins' action was substantially motivated by a desire to deter, retaliate against, or prevent the lawful exercise of a constitutional right. R.T. March at 15. The State argued that based upon the Motions filed, Mr. Bassford had not met that burden. R.T. March at 15. The State further argued that until Mr. Bassford met that burden, an evidentiary hearing should not be set. R.T. March at 15.

The Court explained that Mr. Bassford had the burden at the oral argument to show that he had established a *prima facie* showing "in this case, that the police action against you was motivated to prevent you from exercising your rights." R.T. March at 16. Mr. Bassford asked the Court "if I'm allowed to speak as to the facts of the case at all, considering that that explanation would be inherent to the specifics of that – those incidents." R.T. March at 17. The Court responded that "you certainly can, but before you proceed – finishing, then Ms. Good [the Prosecutor] will get a chance to respond to your argument." R.T. March at 17. The Court further stated that "I would be listening for whether you can establish by *prima facie* evidence that the action was substantially motivated by a desire to deter, whether you are arguing that the police action against you or the prosecution against you." R.T. March at 17. The Court cautioned however, that "statements that you say today could be deemed admissions to the offense, the underlying offense." R.T. March at 18.

The Court then read A.R.S. § 12-751(G) into the record, as follows:

> If the Court denies the motion to dismiss or quash, the denial and the Court's findings in support of the denial are not admissible in evidence at any later stage of the case or in any subsequent action in the burden of proof or degree of proof that is otherwise applicable is not affected by the findings at any later stage of the case or any in any subsequent proceeding.

R.T. March at 19.

The Court further noted "as I read that, that means that my findings as the trier of fact for these proceedings cannot be used later. But as I read that, and I'll invite the parties to argue that, if they disagree, I don't believe that that limits the State from using the Defendant's statements at this hearing in the trial because those would not be the Court's findings." R.T. March at 19. Both the State and Mr. Bassford agreed with the Court's interpretation. R.T. March at 19.

Mr. Bassford then presented his view of the facts, including that he had a lawful purpose to enter the premises of the commercial property. R.T. March at 20. He argued that he "encountered no restrictions" that would result in the denial of his entry and did not engage in disruptive behavior that adversely impacted public accessibility to the business. R.T. March at 20. He noted that he routinely documents and video records public officials in their official capacity to provide transparency to the public and community while posting his interactions via live on scene footage directly to the internet. R.T. March at 21. He noted that as he approached the scene in this case with his cell phone, he was recording and engaged in his First Amendment rights. R.T. at 21.

He then recounted the details of his encounter with the police. He noted that Officer Higgins asserted that his presence was too close and that he needed to "get back". R.T. March at 20. He noted that he told Officer Higgins that he only needed to be 10 feet from him and told him to "focus on his job." R.T. March at 22. He stated that Officer Higgins then said, "they will ask you, Mr. Bassford, to leave." R.T. at 22. Mr. Bassford indicated that he told the officers that he was engaged in his First Amendment right to record them and said that Officer Higgins told him he could record "from the public sidewalk, which is more than 80 feet away and known by Mr. Bassford to be an unreasonable request based on distance." R.T. March at 22. That during this argument, two individuals walked in front of them and were allowed to freely enter the building, coming within a few feet of the officers and the individual on the curb without Officer Higgins asserting that they needed to move back. R.T. March at 22.

Mr. Bassford then stated that Officer Higgins did not request Mr. Bassford to leave the property, but only to move back. R.T. at 22. He stated that Officer Higgins then told Officer Geraldo to ask the representative of QuikTrip to ask Mr. Bassford to leave. R.T. March at 22. He stated that Officer Geraldo then went into the business, and requested the QT employee ask the person who was recording to leave while pointing at him because "he was impeding their investigation." R.T. March at 22. Mr. Bassford then explained that the officers "had no lawful control of his actions in publicly accessible areas." R.T. March at 23. He stated that the QuikTrip employee then asked him to leave. R.T. March at 23. Mr. Bassford indicated that he told the QuikTrip employee that if he were to trespass him, it would be in violation of his protected rights and that Mr. Bassford would file a "civil lawsuit for unlawful trespass." R.T. March at 23.

Mr. Bassford. then indicated that Officer Higgins interrupted his conversation with the QuikTrip employee, stating that the establishment is private property and that he had been asked to leave and that if he did not, he would be charged with trespassing. R.T. March at 23. Mr. Bassford stated that he became frustrated with the interruptions and told Officer Higgins to shut up. R.T. March at 23. Mr. Bassford then stated that Officer Higgins asked Mr. Bassford if he was going to leave, and Mr. Bassford told him that "he did not answer questions." R.T. at 23-24. He argues that the officers then detained him. He argues that he requested the presence of a sergeant immediately and then the situation went from "detainment to full arrest." R.T. at 24.

He argues that the conversation with the officers continued and that they forcefully arrested him and took his camera/phone. R.T. March at 24-25. Mr. Bassford stated that Officer Geraldo "threw the cell phone away onto the pavement, onto the hard pavement with intentional disregard for the care of the property." R.T. March at 25. Mr. Bassford stated that Officer Higgins authorized the use of force by Taser. R.T. at 25-26. Mr. Bassford stated that he began asserting his rights loudly. R.T. March at 26-27. Mr. Bassford stated that many of the police officers confirmed that they knew Mr. Bassford and that he was a First Amendment "auditor". R.T. March at 27. Mr. Bassford stated that he called the officers "oath violators." R.T. March at 28. Mr. Bassford stated that the officers explained that when they encounter people who record, they address officer safety and the possibility of distraction. R.T. March at 28-29. He stated that the explanation seemed to be "the efforts to deter the person from engaging in such activity." R.T. March at 29.

Mr. Bassford noted that he had a First Amendment right to record public officers in their official capacity at commercial private property open to the public, and that the QT parking lot is publicly accessible. R.T. March at 29. Mr. Bassford stated that despite his clear assertions of his rights, "the probable cause statement negates any of the information he provided." R.T. March at 30. He noted that the deliberate actions of the officers to omit such information from the probable cause statement was an action to distort the facts. R.T. March at 30. He argued that the police coerced the QT employee to participate in violating his constitutional protections. R.T. March at 32-33. He argued that the officers' actions and verbal commands to the QT employee were "in clear violation of U.S. code federally protected activities." R.T. March at 32-33.

Mr. Bassford argued that the officers' failure to address any other patrons from entering the building or to get back "appears to establish clear motive to deter Mr. Bassford's constitutional right to record and petition against the officer's unlawful and illegal demands of his compliance." R.T. March at 35. He argued that he was the only individual with the video camera documenting the activities and was clearly targeted for his "participation to decline unlawful orders that would clearly violate his unalienable constitutional rights." R.T. March at 36. He noted that the evidence including body worn camera footage showed that he clearly established his lawful presence and activity which were constitutionally protected. R.T. at 37. He

argued that "the officer's actions were deliberate, conscious and retaliatory, as they continued to evaluate Mr. Bassford's right to due process by arresting him and taking him to jail..." R.T. March at 37. He argues that the City Prosecutor's Office offered a plea deal which offered "constitutional restrictions specifically not to record the City of Mesa police officers within the city limits of Mesa Arizona." R.T. at 38. He argues that a reasonable police officer would apply the law in compliance with the Constitution. R.T. at 38.

In response, the State argued that Mr. Bassford failed to show that there was a substantial motivation or desire by the officers or the State to deter him from exercising his constitutional rights and therefore he had not made a *prima facie* showing to support the Motion. R.T. March at 39.

In reply, Mr. Bassford argued that "every other patron of the establishment" was allowed to pass by the same location of Mr. Bassford, so long as they didn't have a cell phone. R.T. March at 40.

The Court then heard arguments in a separate matter against Mr. Bassford that presented similar issues. The Court concluded by finding that "the defendant has made a *prima facie* showing in each matter. The matters will be set for an evidentiary hearing." R.T. March at 48.

On May 30, 2023, the Court held the evidentiary hearing on the Motion to Quash/Dismiss. Minute Entry, 5/30/23. At the hearing, Detective Higgins testified that on March 3, 2022, he was on duty with the Mesa Police Department as a Field Training Officer with Officer Geraldo. He responded to a QuikTrip concerning an individual passed out behind a steering wheel in a vehicle located at the convenience store. Reporter's Transcript, 5/30/23 (R.T. May) at 6. While conducting a DUI investigation concerning the individual, Detective Higgins noticed Mr. Bassford about 10 feet away. R.T. May at 7-8. He stated that he asked Mr. Bassford to take a few steps back and Mr. Bassford became argumentative. R.T. May at 8. Detective Higgins testified that he told Mr. Bassford that he did not care if he recorded him, and that he could "go out to the sidewalk and record, but that this was private property." R.T. May at 9. Detective Higgins testified that he was concerned for everyone's safety, including Mr. Bassford's. R.T. May at 9. Detective Higgins testified that Detective Geraldo went into the QT to get a store employee, and that the employee asked Mr. Bassford to leave multiple times, but Mr. Bassford refused and threatened him with "a charge" if he trespassed him. R.T. May at 11. Detective Higgins testified that Mr. Bassford then was lawfully detained, and as he began to step away, he was advised that he was under arrest for trespassing. R.T. May at 11-12.

Detective Higgins testified that he was trained to not allow unknown individuals to be that close during an investigation and that he would have treated anyone the same regardless of whether they were recording him. R.T. May at 12-13. Detective Higgins testified that his actions

were an attempt to de-escalate the situation to have Mr. Bassford simply backup a little bit. R.T. May at 21-22, 36-37. He testified that his intentions were not to deter Mr. Bassford from exercising his First Amendment rights to record him, did not prevent him from exercising his First Amendment rights to record him, and did not retaliate against him for recording. R.T. May at 37. He testified that he never asked Mr. Bassford to stop recording or ask him to put away his phone. R.T. May at 37.

After Detective Higgins testified, the State rested its case. R.T. May at 38. Thereafter, the Court asked Mr. Bassford whether he had "a case that you'd like to present at this time, sir, short of what, in addition to what you've already presented, sir?" R.T. May at 38. Mr. Bassford stated that he did not. R.T. May at 38. The parties then provided closing arguments. R.T. May at 38-47.

The Court found "that it can consider the evidence that was raised in the case that Mr. Bassford made in establishing his *prima facie*." R.T. May at 48. The Court also noted "for purposes of the record that the Court did not order the State to file a response in this case. Nothing about that statute says that the nonmoving party cannot file a response." R.T. May at 48. The Court further stated that it "heard the testimony here today, and that it was "also basing its decision on the information that was presented at the *prima facie* hearings, …." R.T. May at 49. The Court then addressed each of the cases presented related to Mr. Bassford. R.T. May at 49-58.

The Court noted that, as to this case, Mr. Bassford was recording Detective Higgins, and the parties had a conversation. R.T. May at 54. The Court noted that Detective Higgins sent Officer Geraldo inside to obtain a QT employee and didn't say why he wanted the employee. R.T. Mat at 54. He found that Detective Higgins informed Mr. Bassford that he could record if he went further away. R.T. May at 54. The Court noted that Mr. Bassford argued that the distance was 80 feet, and the Detective did not dispute that. R.T. May at 54. The Court then noted "while the court found the Detective's testimony credible that he was not doing this with the purpose of infringing upon Mr. Bassford's right, constitutional rights, the court finds under the totality of the circumstances, that is exactly what happened." R.T. May at 55. The Court noted that "the State at the previous setting said that a term of plea offer in this case was the probation. And that the term of that probation was that Mr. Bassford could no longer record Mesa PD officers." R.T. May at 55.

The Court then noted as follows:

> "the offense for which he is accused of did not rise until the Detective took action to locate a private citizen or private employee to then tell the Defendant to leave, basically, creating the circumstance under which Mr. Bassford was deemed to have been trespassing.

Whether the detective did so truly for officer safety, or if he did so because he did not wish to be recorded, that is something only Detective Higgins knows. In any other – in any case, the Court cannot tell what someone knows. I have to take their testimony; I have to take the evidence. I cannot read someone's mind.

In this case, as I said, I found the detective's credible testimony credible. I have no reason to doubt that officer safety was at issue and that was his concern. The facts are that the Defendant was located at a location where at the moment he was lawfully permitted to be. He did not initiate contact with the officer. Law enforcement, law enforcement initiated contact with him.

That, and in with the additional term that the plea offer in this case was directing Mr. Bassford, if you were to accept the plea, then the Court would accept it, that as part of his terms of probation is that he could no longer record Mesa officers, colors the entire case. That this entire action and the statute does not distinguish between that of the investigative body and the prosecutory (sic) agency under the law, they are one. They are the state. In this case, the totality of the state's actions was to deter Mr. Bassford from engaging in a lawful constitutional right.

Therefore, the court grants the motion to dismiss as to the QT case…."

R.T. May at 55-57.

The Court asked Mr. Bassford whether he understood, and he confirmed that he did. R.T. May at 57.-58. The Court also asked whether there was "anything from the State?" R.T. May at 58. The State did not make an objection to the Court's statement that it based its decision on the information that was presented at the *prima facie* hearings. R.T. May at 58.

The State filed a timely Notice of Appeal on June 12, 2023. This Court has jurisdiction pursuant to Ariz. Const. Art. 6, § 16; and A.R.S. § 12–124(A).

## II. Legal Standard

In absence of an objection, an Appellate Court reviews the record for fundamental error. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). An Appellant must show that the Trial Court committed an error both fundamental and prejudicial. *State v. Henderson,* 210 Ariz. 561, 568 ¶

26 (2005). Appellate Courts review issues of statutory construction *de novo*. *State v. Rogers*, 227 Ariz. 55, 56 ¶ 2 (App. 2010).

Fundamental error occurs when the error (1) goes to the foundation of the case; 2) takes a right essential to the Defendant's defense; or 3) amounts to error of such magnitude that the Defendant could not possibly have received a fair trial. *Escalante*, 245 Ariz. at 142 ¶ 21. An error goes to the foundation of the case if it relieves the prosecution of the burden of proving one or more of a crime's elements, directly impacts a factual dispute, or deprives the defendant of constitutionally guaranteed procedures. *Escalante*, 245 Ariz. at 141 ¶ 18. When a Trial Court improperly admits evidence that serves as the linchpin for proving an element of the offense, this may constitute fundamental error going to the foundation of the case. *Escalante*, 245 Ariz. at 143 ¶ 27. If a Defendant then demonstrates that absent the evidence, "a reasonable jury… could have reached a different [verdict]," he demonstrates prejudice and prevails. *Escalante*, 245 Ariz. at 144 ¶ 29.

"In any legal action that involves a person's lawful exercise of the right of petition, the right of speech, the freedom of the press, the right to freely associate or the right to peaceably assemble pursuant to the United States Constitution or Arizona Constitution, the person other than a state actor or an intervenor may file a motion to dismiss or quash the action under this section." A.R.S. §13-1502(A). "A person who files a motion pursuant to subsection A of this section has the burden of establishing prima facie proof that the legal action was substantially motivated by a desire to deter, retaliate against or prevent the lawful exercise of a constitutional right." A.R.S. § 12-751(B).

## III. Discussion

### A. Did the Municipal Court commit reversible error by relying on statements from *prima facie* hearing?

In the State's Amended Appellant's Memorandum (Appellant's Memorandum), the State argues that the Trial Court erred in relying on statements that Mr. Bassford made in the *prima facie* oral argument as evidence. It argues that the Arizona Supreme Court declared that "prima facie evidence" is "strictly, no evidence at all. It is only a presumption of law…. It has been uniformly so treated and denominated by this court…. And such presumptions are merely arbitrary rules of law, to be applied in the absence of evidence. Whether evidence contradicting a legal presumption is introduced, the presumption vanishes." *Silva v. Traver*, 63 Ariz. 364, 367-368 (1945), overruled by *Reed v. Hinderland*, 135 Ariz. 213 (1983). The State argues that the presumption created by *prima facie* evidence merely affects the burden of producing evidence and that the presumption vanishes when the opposing party introduces evidence contradicting the presumption. *Universal Underwriters Insurance Company v. State Auto and Casualty Underwriters*, 108 Ariz. 113, 115 (1972).

Because the State did not object to the Trial Court's Ruling regarding the consideration of facts from the *prima facie* hearing, this Court must consider whether any error was fundamental error. The first question is whether the Trial Court committed error at all. In this case, the matter presented procedural challenges. The Defendant was representing himself throughout the proceedings. At the oral argument on the Motion to Dismiss, the Court proceeded with the State's request for a *prima facie* showing. Mr. Bassford, therefore, was providing not only legal argument, but also factual background as a party to the case. The Court did not swear in Mr. Bassford which creates confusion as to whether his factual statements were evidence, or simply part of his argument. Yet, Mr. Bassford did seek clarification in asking whether he could speak to the facts, which the Court permitted. Ultimately, the Court concluded, and the parties agreed, that Mr. Bassford's statements at the *prima facie* hearing could be considered admissions. Therefore, the parties appeared to acknowledge that Mr. Bassford's statements could be considered statements of fact to be relied on in the hearings.

For the purposes of this Appeal, this Court presumes without deciding that the Municipal Court erred in considering the facts from the *prima facie* hearing at the evidentiary hearing. This Court must then assess whether the error is fundamental. Because the State is bringing the Appeal, the only possibly relevant consideration is whether the error goes to the foundation of the case.

In this case, the Municipal Court heard factual statements from Mr. Bassford during the oral argument and *prima facie* hearing. The Court then heard evidence from Detective Higgins at the evidentiary hearing. Mr. Bassford was not placed under oath and was not cross-examined or questioned. Nevertheless, the basic facts between Mr. Bassford and Detective Higgins' versions of the events were not in dispute. As a practical matter, because the State did not object to the Trial Court's Ruling, the Trial Court did not have the opportunity to address any concerns that might have allowed Mr. Bassford to put on his evidence directly during the evidentiary hearing. *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."). Therefore, while the Municipal Court may have erred by considering Mr. Bassford's factual statements from the oral argument, the error cannot be said to have been fundamental in the outcome of the case.

B. Did substantial evidence support the Municipal Court's conclusion?

The State argues that the Court erred in finding the State in violation of A.R.S. § 12-751 when the only evidence to consider was Detective Higgins' testimony to the contrary. As noted above, the State failed to object to the Municipal Court's consideration of Mr. Bassford

statements at the oral argument. In addition, the Court's consideration of Mr. Bassford's statements was not fundamental error. Therefore, the State's position that the only evidence to consider was Detective Higgins' testimony is incorrect.

In addition, the facts presented by Mr. Bassford and by Detective Higgins as to the State's conduct supports the conclusion that Detective Higgins violated A.R.S. § 12-751. Mr. Bassford indicated, and Detective Higgins confirmed, that after initially telling him to "backup," Detective Higgins told him to stand on the public sidewalk. R.T. March at 20, 22; R.T. May at 9. Mr. Bassford stated that the sidewalk was 80 feet away, considerably farther away from the police investigation than where Mr. Bassford was standing. RT March at 22. In addition, both Mr. Bassford and Detective Higgins acknowledged that Detective Higgins requested the presence of the QT employee. R.T. March at 22; R.T. May at 11. Mr. Bassford stated that the officers did not stop other individuals who are not taking videos from entering the QT even though they physically were close to Detective Higgins' investigation. R.T. March at 35-36. The State offered no evidence in dispute. Further, Mr. Bassford stated that the officers treated his camera very roughly. R.T. March at 25. The State again offered no evidence in dispute. Finally, Mr. Bassford stated that the State offered a plea agreement under which he would agree not to record Mesa police. R.T. March at 38-39. Once again, the State offered no evidence in dispute. All of these facts support the conclusion made by the Municipal Court that the State had a "desire to deter, retaliate against or prevent the lawful exercise of a constitutional right."

C. Did the Municipal Court err by improperly interpreting and applying A.R.S. § 12-751?

The State argues that a Defendant may show that the legal action was substantially motivated by a desire to deter, retaliate against or prevent the lawful exercise of a constitutional right. It argues that the Trial Court erred by focusing on the effect of the State's actions, rather than the purpose. It argues that the Court found Detective Higgins's testimony credible that he was not acting with the purpose of infringing on Mr. Bassford's rights. The State argues that it is not the impact of what happened that is prohibited, rather it is the motivation for what happened.

As noted above, substantial evidence existed in the Record to support a finding that the State intended to violate Mr. Bassford's rights. Therefore, this Court must uphold the Municipal Court's conclusion.

## IV. Conclusion

Based on the foregoing,

**IT IS ORDERED** affirming the Judgment and Sentence of the Mesa Municipal Court.

**IT IS FURTHER ORDERED** remanding this matter to the Mesa Municipal Court for such further proceedings, if any, as may be appropriate.

No matters remain pending in connection with this appeal. This is a final order. *See* Rules 12(b), 12(c), 13(b), Sup. Ct. R. App. P. – Criminal.

*/s/ Joseph P. Mikitish*
THE HON. JOSEPH P. MIKITISH
Judge of the Superior Court

NOTICE: LC cases are not under the e-file system. As a result, when a party files a document, the system does not generate a courtesy copy for the Judge. Therefore, you will have to deliver to the Judge a conformed courtesy copy of any filings.

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record who are registered to receive electronic service. For any parties not registered with CM/ECF, a copy will be served by U.S. Mail, Email, or Personal Delivery, as noted in the proof of service on file.

**Duncan Stoutner**

**P.O. Box 1466**

**Mesa, AZ 85201-1466**

Respectfully submitted,

*/s/ Gabriel Bassford*

Gabriel J. Bassford
*Plaintiff Pro Se*
1901 W. Madison St.
Apt. 605
Phoenix, AZ 85009
(480) 714-1675

Gabriel J. Bassford
1901 W. Madison St.
Apt 605
Phoenix, Arizona 85009
Gbassford01@gmail.com
(480)714-1675

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DIVISION OF PHOENIX

| | |
|---|---|
| Gabriel J. Bassford,<br><br>Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>Defendants. | No. CV-25-1034-PHX-JAT<br><br>**ORDER GRANTING**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY AND CORRECT APPELLATE FINALITY ORDER** |

The Court, having considered Plaintiff's Motion for Leave to File Notice of Supplemental Authority and Correct Appellate Finality Order, and good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will accept and consider Plaintiff's Notice of Supplemental Authority and Correct Appellate Finality Order, together with Exhibit A.

DATED this ______day of ___________, 2026.

_________________________________

Honorable James A. Teilborg

United States District Judge