WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel J Bassford, | No. CV-25-01034-PHX-JAT (CDB) |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Pending before the Court is Defendant City of Mesa's (the "City") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (Doc. 107). Pro se Plaintiff Gabriel J. Bassford filed a Response (Doc. 113), and the City filed a Reply (Doc. 114). Also pending before the Court is Plaintiff's Motion for Reconsideration (Doc. 109). The City filed a response (Doc. 111), and Plaintiff filed a Reply (Doc. 112). The Court now rules.

## I.    BACKGROUND

Plaintiff alleges that on March 2, 2022, he was arrested while filming Mesa Police Officers who were responding to a call at a QuikTrip convenience store. (Doc. 76 at 30 ¶ 27). On March 28, 2025, Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff subsequently filed his 147-page FAC, alleging 25 claims against 24 Defendants and John Does, and seeking $521.5 million in damages. (Doc. 76 at 54–141). On July 16, 2025, the Court dismissed all Defendants named in the FAC except the City, the Mesa Police Department (the "MPD"), City of Mesa Police Officers Dominic Higgins and Juan Giraldo, and City of Mesa Police Sergeant Kevin Bailey. (Doc. 77 at 10).

The remaining Defendants then moved to dismiss the FAC based on insufficient process and insufficient service of process. (Doc. 81). On February 11, 2026, the Court granted Defendants' motion as to the MPD and the three individual officers, but denied the motion as to the City. (Doc. 106 at 10). The Court dismissed the MPD "because it is a non-jural entity that is not subject to suit under § 1983." (Doc. 106 at 7). The Court dismissed the individual Defendants for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). (Doc. 106 at 8–9). On March 4, 2026, the City filed a renewed Motion to Dismiss (Doc. 107) as permitted by the Court's February 11, 2026 Order (Doc. 106 at 11). On March 11, Plaintiff filed a Motion for Reconsideration (Doc. 109) of the dismissal of the individual Defendants in the Court's February 11, 2026 Order (Doc. 106).

## II.    LEGAL STANDARD

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will be dismissed for failure to state a claim if it lacks either "a cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

"All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the court need not accept legal conclusions couched as factual allegations, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–80.

In considering a 12(b)(6) motion to dismiss, courts ordinarily may not consider evidence outside the pleadings without converting the motion into a Rule 56 motion for

summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (instructing that courts should "construe pro se filings liberally . . . , particularly in civil rights cases" (internal quotation marks and citation omitted)).

## III.   DISCUSSION

Plaintiff alleges 25 claims against the City. (Doc. 76 at 54–135). The City argues that Plaintiff's federal and state law claims that accrued in March 2022 are untimely (Doc. 107 at 3–4), that Plaintiff's § 1983 claims fail because Plaintiff has not established *Monell* liability (Doc. 107 at 5–6), and that the remaining claims fail on the merits (Doc. 107 at 7–12). As explained below, the Court will grant the City's Motion to Dismiss in its entirety and will address leave to amend as to each claim.

### A.  State Law Claims

Claims 14 through 22 arise under Arizona law. (Doc. 76 at 109–29). As explained below, claims 13–22 will be dismissed with prejudice.

#### i.      Time-Barred State Law Claims

Under Arizona law, "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821. Moreover, a plaintiff must file a notice of claim pursuant to A.R.S. § 12-821.01 within 180 days after the cause of action accrues. A.R.S. § 12-821.01(A); *Sanchez v. Maricopa Cnty.*, 260 Ariz. 136, 109 ¶ 21 (2025). A "public entity" includes the state of Arizona and "any political subdivision" of the state. A.R.S. § 12-820(7). A "public employee" is "an employee of a public entity." A.R.S. § 12-820(6). The City is a "public

entity" under the statute, and City of Mesa police officers are "public employees" under the statute. *See City of Mesa v. Ryan*, 258 Ariz. 297, 298 ¶ 2 (2024). Therefore, Plaintiff was required to file a notice of claim within 180 days after the cause of action accrued, and he was required to file his claim within one year after the cause of action accrued.

Plaintiff alleges that he filed his notice of claim with the City on March 25, 2025. (Doc. 76 at 45 ¶ 99). Thus, any state law cause of action that accrued before September 26, 2024, is time-barred by A.R.S. § 12-821.01(A).

Under Arizona's notice of claim statute, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see Satamian v. Great Divide Ins. Co.*, 257 Ariz. 163, 169 ¶ 11, 170 ¶ 13 (2024) ("Generally, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." (quotation marks and citations omitted)). "To determine when a cause of action accrues, an analysis of the elements of [the cause of action] is necessary." *Thompson v. Pima Cnty.*, 226 Ariz. 42, 45 ¶ 10 (App. 2010) (alterations in original) (quoting *Dube v. Likins*, 216 Ariz. 406, 411 ¶ 7 (App. 2007)).[1]

Claim 14 alleges assault under Arizona law (Doc. 76 at 110 ¶¶ 344, 346). "[A] claim for common-law assault requires an allegation that the defendant acted intentionally to cause a harmful or offensive contact and another person is placed in imminent apprehension of the contact." *Gallegos v. Flores*, No. 1 CA-CV 10-0178, 2012 WL 208858, at *3 ¶ 11 (Ariz. App. Jan. 24, 2012) (mem. decision). Plaintiff alleges that the arresting officers placed him "in reasonable apprehension of imminent harmful or offensive

[1] Plaintiff brings his state law claims against the City under the doctrine of respondeat superior. "The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees" when "the employee is acting within the scope of employment." *Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 9 (2012) (quotation marks and citations omitted). Although the Court's February 11, 2026 Order dismissed the individual officers for insufficient service (Doc. 106 at 8–10), "dismissal of a claim against an employee for reasons unrelated to a claim's merits does not foreclose a respondeat superior claim against the employer." *Laurence v. Salt River Project Agricultural Improvement & Power Dist.*, 255 Ariz. 95, 100 ¶ 16 (2023).

contact" on March 2, 2022. (Doc. 76 at 109 ¶¶ 342–43). Plaintiff's assault claim accrued when the incident occurred on March 2, 2022 and is therefore untimely.

Claim 15 alleges battery under Arizona law (Doc. 76 at 111 ¶¶ 349–53). "To establish a battery claim, a plaintiff must prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur." *Johnson v. Pankratz*, 196 Ariz. 621, 623 ¶ 6 (App. 2000). Plaintiff alleges the arresting officers "intentionally and unlawfully touched [him] in a harmful and offensive manner . . . during his arrest and detention." (Doc. 76 at 111 ¶ 349). Plaintiff's battery claim accrued when the incident occurred on March 2, 2022 and is therefore untimely.

Claim 16 alleges unlawful arrest and imprisonment under Arizona law. (Doc. 76 at 112 ¶ 359, 113 ¶ 361). Under Arizona law, claims of false arrest and imprisonment accrue when the arrest occurs. *Rondelli v. Pima Cnty.*, 120 Ariz. 483, 485 (App. 1978); *Hansen v. Stoll*, 130 Ariz. 454, 460 (App. 1981). Plaintiff's unlawful arrest and imprisonment claim accrued when the arrest occurred on March 2, 2022 and is therefore untimely.

Claim 17 alleges invasion of privacy under Arizona law. (Doc. 76 at 114 ¶ 369, 115 ¶ 373). "An invasion of privacy claim based on intrusion upon seclusion requires proof that the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, and the intrusion would be highly offensive to a reasonable person." *Scholtes v. Gonzales*, No. 1 CA-CV 21-0290, 2022 WL 287971, at *3 ¶ 14 (Ariz. App. Feb. 1, 2022) (mem. decision) (cleaned up); *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 279 (App. 1997). Plaintiff alleges that the arresting officers invaded his privacy when they patted him down and searched him on the night of the arrest. (Doc. 76 at 112 ¶ 365, 113 ¶ 366). Plaintiff's invasion of privacy claim accrued when the incident occurred on March 2, 2022 and is therefore untimely.

Claim 18 alleges trespass to chattel under Arizona law. (Doc. 76 at 116–17 ¶¶ 376–82, 118 ¶ 388). Plaintiff alleges that one of the arresting officers grabbed his phone and threw it to the ground. (Doc. 76 at 35 ¶ 57). Plaintiff further alleges that his cell phone was seized on the night of the incident and that the interference "went beyond a temporary

deprivation of use" because his phone "was ultimately destroyed and rendered inoperable" while in police custody. (Doc. 76 at 115 ¶ 379, 116 ¶¶ 380–83). "[A] claim for a permanent trespass accrues when the trespass begins." *Maricopa Cnty. v. Rovey*, 250 Ariz. 219, 425 ¶ 19 (App. 2020); *see also Est. of Keith ex rel. Keith v. E.R. Keith Props.*, No. 1 CA-CV 09-0236, 2010 WL 2780678, at *4 ¶ 18 (Ariz. App. July 13, 2010) (mem. decision) ("A cause of action for conversion accrues 'at the time of the wrongful taking.'" (quoting *Jackson v. Am. Credit Bureau, Inc.*, 25 Ariz. App. 199, 201 (1975))). Plaintiff's phone was thrown to the ground and taken into evidence on March 2, 2022. (Doc. 76 at 36 ¶ 62). Because Plaintiff knew that his phone was damaged and seized by the police at the time of the arrest, Plaintiff's trespass to chattel claim accrued on March 2, 2022 and is therefore untimely.

Claim 20 alleges intentional infliction of emotional distress ("IIED") under Arizona law. (Doc. 76 at 121 ¶ 400, 123 ¶ 410). *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987). "A plaintiff suing for intentional infliction of emotional distress must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." *Watkins v. Arpaio*, 239 Ariz. 168, 170–71 ¶ 8 (App. 2016); *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 516 ¶ 11 (2005). Plaintiff alleges that his emotional distress was caused by the arrest and detention on March 2, 2022, and the criminal charges against him that were initiated on March 3, 2022. (Doc. 76 at 121 ¶ 402). Thus, Plaintiff would have had requisite knowledge at the time of his arrest and the initiation of the criminal proceedings against him that he suffered emotional distress. *See Thompson*, 226 Ariz. at 46 ¶ 12; *Watkins*, 239 Ariz. at 172 ¶ 14. Although the criminal charges continued through October 2, 2024 (Doc. 115), under A.R.S. § 12-921.01, Plaintiff's IIED claim accrued when the alleged acts were sufficient to support an IIED claim, not when the alleged acts concluded. *Watkins*, 239 Ariz. at 172 ¶¶ 14–15. Accordingly, Plaintiff's IIED claim accrued by March 3, 2022 and is therefore untimely.

Claim 21 alleges negligence under Arizona law. (Doc. 76 at 124 ¶ 413, 126 ¶ 422).

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007). A negligence claim accrues when a plaintiff "knew or reasonably should have known of the defendant's negligent conduct" and the plaintiff has sustained damages. *Amfac Dist. Corp. v. Miller*, 138 Ariz. 152, 154 (1983). Plaintiff alleges that officers acted negligently in arresting and detaining Plaintiff and in seizing his phone. (Doc. 76 at 124–25 ¶ 415). Plaintiff alleges that these negligent acts caused him emotional, reputational, and financial harm. (Doc. 76 at 125 ¶ 416). Thus, Plaintiff knew of the alleged negligent conduct and Plaintiff's alleged harms by March 3, 2022. Plaintiff's negligence claim is therefore untimely.

In sum, claims 14–18, 20, and 21 are time-barred under Arizona's notice of claim statute. A.R.S. § 12-821.01. Dismissal due to a failure to comply with the notice of claim statute results in a dismissal with prejudice. *Crick v. City of Globe*, 606 F. Supp. 3d 912, 918 (D. Ariz. 2022). Accordingly, claims 14–18, 20, and 21 are dismissed with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (concluding that dismissal with prejudice was proper when "amendment would not cure the deficiencies in the complaint"); *Fordjour v. Southwall Techs., Inc.*, 126 F. App'x 351, 353 (9th Cir. 2005) (determining "any amendment to the claim would have been futile" and therefore dismissal with prejudice was proper when "there exists no legal basis for suing [the defendant] under the [act]").

ii.    Claim 13

Claim 13 alleges conspiracy to interfere with civil rights under Arizona law. (Doc. 76 at 103–09, 108 ¶¶ 336, 339). "Arizona does not recognize the existence of the tort of 'conspiracy'." *Hansen v. Stoll*, 130 Ariz. 454, 460 (App. 1981); *Consolidated Tungsten Mines, Inv. v. Frazier*, 87 Ariz. 128, 138 (1960) ("A conspiracy itself furnishes no grounds whatever for a civil action. It is the doing of the thing for which the conspiracy was formed

that furnishes the basis for such civil action."); *Hale v. Brown*, 84 Ariz. 61, 70 (1958). "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'" *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 ¶ 99 (2002) (citation omitted).

Here, Plaintiff does not assert an underlying state law claim; rather, the underlying tort alleged by Plaintiff is the deprivation of his First, Fourth, and Fourteenth Amendment rights under the Federal Constitution. (Doc. 76 at 103 ¶ 320, 108 ¶¶ 335–37). "[A] § 1983 claim is the vehicle through which a party may seek damages for" the deprivation of a constitutional right. *Allen v. Ariz. Dep't of Corrections*, Nos. 1 CA-CV 07-0242, 1 CA-CV 08-0397, 2009 WL 2382026, at \*10 ¶ 45 (Ariz. App. Aug. 4, 2009); *Wilkie v. State*, 161 Ariz. 541, 546 (App. 1989) ("Although the Fourteenth Amendment establishes binding standards of conduct for state and local government, it does not authorize remedies when its provisions are breached. Section 1983 fills this vital gap." (quotation marks and citation omitted)). Accordingly, Plaintiff fails to state a valid conspiracy claim under state law.

Moreover, even if Plaintiff could state a valid conspiracy claim under state law, Plaintiff's conspiracy claim is untimely. Plaintiff alleges that the alleged conspiracy began on March 2, 2022 with acts of the officers, and continued through his prosecution on March 14, 2023, and the prosecution's appeal on June 13, 2023. (Doc. 76 at 104–05). Thus, Plaintiff's conspiracy claim would have accrued by at least June 13, 2023, and is therefore time-barred by A.R.S. § 12-821.01(A). Accordingly, claim 13 is dismissed with prejudice.

iii.    Claim 19

Claim 19 alleges malicious prosecution under Arizona law. (Doc. 76 at 119 ¶¶ 391–93, 120 ¶ 397). "A malicious prosecution claim accrues when the prior proceedings have terminated in the defendant's favor." *Nataros v. Super. Ct. of Maricopa Cnty.*, 113 Ariz. 498, 500 (1976). Proceedings are not considered terminated if an appeal is pending. *Frey v. Stoneman*, 150 Ariz. 106, 109 (1986); *Moran v. Klatzke*, 140 Ariz. 489, 491 (App. 1984). On May 30, 2023, Plaintiff's criminal charges were dismissed pursuant to A.R.S. § 12-751.

(Doc. 115 at 9, 11; Doc. 76 at 40–41; Doc. 113 at 2). The prosecution filed a timely notice of appeal on June 12, 2023. (Doc. 115 at 11). The dismissal was affirmed and the appeal resolved on October 2, 2024. (Doc. 115 at 14–15). Thus, Plaintiff's malicious prosecution claim accrued on October 2, 2024, within 180 days of March 25, 2025 and within one year of March 28, 2025, and is not untimely.

The City argues that Plaintiff failed to state a valid malicious prosecution claim. (Doc. 107 at 7–10). "A plaintiff presenting a claim for malicious prosecution must establish the following elements: that a prior prosecution terminated in favor of the plaintiff, that the defendant was the prosecutor, that it was actuated by malice, that there was no probable cause and that damages were sustained." *Frey*, 150 Ariz. at 109; *Cullison v. City of Peoria*, 120 Ariz. 165, 169 (1978).

"[T]he existence of probable cause to institute an action is a complete defense to malicious prosecution without regard to the existence of malice." *Cullison*, 120 Ariz. at 169; *Murphy v. Russel*, 40 Ariz. 109, 110 (1932) ("If it was malicious, and yet there was probable cause, there can be no recovery."). "In the context of malicious prosecution, probable cause is defined as 'a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense . . . . The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?'" *Gonzales v. City of Phx.*, 203 Ariz. 152, 155 ¶ 13 (2002) (quoting *McClinton v. Rice*, 76 Ariz. 358, 367 (1953)). "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court." *Cullison*, 120 Ariz. at 168; *McClinton v. Rice*, 76 Ariz. 358, 367 (1953).

The Court agrees with the City that Plaintiff cannot show a lack of probable cause. (Doc. 107 at 7). Plaintiff alleges that prosecutors brought charges of "trespassing and resisting arrest" against him. (Doc. 76 at 37 ¶ 65). Under Arizona law, "[a] person commits criminal trespass in the third degree by . . . knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner

or any other person having lawful control over such property, or reasonable notice prohibiting entry." A.R.S. § 13-1502(A)(1).

Plaintiff alleges in the FAC that he was on QuikTrip property filming the officers. (Doc. 76 at 31). He alleges that he was approximately 15 feet away from the officers when Officer Higgins asked Plaintiff "to get back." (Doc. 76 at 31). Plaintiff "stated to officer Higgins that he only needed to be ten feet away from him and to focus on his job." (Doc. 76 at 31 ¶ 35). Officer Higgins then instructed Plaintiff to step back or QuikTrip employees would ask him to leave. (Doc. 76 at 31 ¶ 36). Plaintiff refused again. (Doc. 76 at 32 ¶ 37). Officer Higgins then told Plaintiff he could continue recording on public property while pointing to the sidewalk. (Doc. 76 at 32 ¶ 38). Plaintiff admits that after this warning he "refused to move." (Doc. 76 at 32 ¶ 40). Officers then asked a QuikTrip employee to trespass Plaintiff. (Doc. 76 at 32 ¶ 40). Plaintiff alleges that a QuikTrip employee came outside and asked him to leave the premises. (Doc. 76 at 33 ¶ 45). Plaintiff alleges that rather than leaving, he told the QuikTrip employee that the "request to leave was an unlawful request that is subject to a suit." (Doc. 76 at 33 ¶ 46). Officer Higgins then informed Plaintiff that he was lawfully detained. (Doc. 76 at 34 ¶ 47).

The facts as alleged by Plaintiff are sufficient for a reasonable officer to conclude that Plaintiff had violated Arizona's trespassing law. *See Pfaendler v. Town of Sahuarita*, 2024 WL 1756095, at *1 (9th Cir. Apr. 24, 2024) (concluding that probable cause existed when "[o]fficers had uncontradicted information that the store manager, a 'person having lawful control over [the] property,' had made one or more 'reasonable request[s] to leave,'" and that the plaintiff, "still in the store when officers arrived, appeared to be 'remaining unlawfully'"); *Winkler v. City of Phoenix*, 849 F. App'x 664, 668 (9th Cir. 2021); *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 919 (D. Ariz. 2019). In addition to the officer asking Plaintiff twice to step back and to move to the sidewalk, the officer witnessed the QuikTrip employee ask Plaintiff to leave the premises. Thus, the officer knew there was "a reasonable request to leave" communicated by both "a law enforcement officer" and "a person having lawful control over [the] property." A.R.S. § 13-1502(A)(1). Plaintiff admits

- 10 -

that he refused each request to leave the premises despite having multiple opportunities to leave, and therefore "remain[ed] unlawfully." *Id.* The information before the officers was therefore sufficient to establish probable cause.

Therefore, Plaintiff cannot demonstrate a lack of probable cause, and Plaintiff's malicious prosecution claim fails as a matter of law. Because this defect cannot be cured without Plaintiff contradicting the factual allegations in his FAC, and thus amendment would be futile, claim 19 will be dismissed with prejudice.

iv.   Claim 22

Claim 22 seeks "declaratory judgment that the City is obligated to indemnify the individual Defendants for any compensatory damages, costs, and fees awarded against them pursuant to A.R.S. § 41-621(A)(3)." (Doc. 76 at 127 ¶ 426, 128 ¶ 430, 129 ¶ 435). The declaratory relief Plaintiff seeks is improper for several reasons.

First, the Ninth Circuit Court of Appeals has held that any viable claims under Arizona's indemnification statute, A.R.S. § 41-621, must be pursued in the state court system. *Laufman v. Elliston*, 116 F. App'x 88, 89 (9th Cir. 2004); *Demery v. Kupperman*, 735 F.2d 1139, 1148 (9th Cir. 1984) ("When, as here, the state's obligation to pay damages derives not from the nature of plaintiff's claim, but from an entirely collateral, voluntary undertaking on the part of the state, . . . [i]f plaintiff prevails on the merits, the court will not be ordering the state to do anything; it will only be ordering the *official* to pay damages. If the state official desires indemnification under the state statute, he must bring suit in a state court. And if plaintiff prevails in his suit against the officials, any suit by him seeking to enforce his award against the state in federal court would be barred by the eleventh amendment." (internal citation omitted)).

Moreover, because the individual officers have been dismissed from this case, there can be no damages, costs, or fees awarded against the individual officers, and therefore the issue of indemnification under A.R.S. § 41-621 is moot. *See Shell Gulf of Mexico Inc. v. Ctr. For Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).

Because Plaintiff is not the proper party to bring an indemnification claim under

A.R.S. § 41-621, and federal court is not the proper forum for such a claim, leave to amend would be futile and therefore claim 22 is dismissed with prejudice.

### B. Section 1983 Claims

Plaintiff alleges several § 1983 claims against the City, a municipal corporation (namely, claims 1–9). (Doc. 76 at 22 ¶ 2, 54–87).

#### i.    Claim 8

Claim 8 alleges conspiracy to deprive Plaintiff of his constitutional rights under § 1983. (Doc. 76 at 75–83). "To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012); *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012), *superseded by statute on other grounds*. "It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Id.*

Plaintiff alleges the individual officers and prosecutors conspired to deprive Plaintiff of his First, Fourth, and Fourteenth Amendment rights. However, the Court has dismissed Plaintiff's claims of underlying constitutional deprivations, and therefore Plaintiff cannot "show that any actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121 (9th Cir. 1989); *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006).

Additionally, even assuming the existence of an underlying constitutional violation, Plaintiff's conspiracy claim against the City fails because "a municipal entity cannot conspire with itself." *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1170 (C.D. Cal. 2007); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1075 (D. Ariz. 2012) ("Plaintiffs' conspiracy claims are appropriately dismissed under the intracorporate conspiracy doctrine, which bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional rights."). Accordingly, claim 8 is

dismissed with prejudice.

ii.   *Monell* Liability

The remaining § 1983 claims (claims 1–7 and 9) can only be brought against the City if Plaintiff establishes *Monell* liability. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (cleaned up).

"A government policy is 'a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A policy, custom, or practice may be established in three ways: (1) an expressly adopted official policy, (2) a longstanding practice or custom, including failure to implement procedural safeguards or failure to train, and (3) a violation was committed by or ratified by an official with final policymaking authority. *Id.* at 973–74; *see also Christie v. Iopa*, 176 F.3d 1231, 1235–41 (9th Cir. 1999); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

A plaintiff bringing a *Monell* claim "may not simply recite the elements of a cause of action," but must plead "sufficient allegations of underlying facts to give fair notice and

to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F. 3d 631, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).

The City argues that Plaintiff has not established *Monell* liability. (Doc. 107 at 5–6). Plaintiff argues that the introductory paragraphs of his FAC (Doc. 76 at 12–14) and claim 12 (Doc. 76 at 99–104) plausibly allege *Monell* liability for his claims arising under § 1983. (Doc. 113 at 8).

Claim 12 alleges "*Monell* Liability" for "Bad Hiring Practices, Failure to Train, Supervise, and Discipline." (Doc. 76 at 98). However, "a *Monell* claim is not a stand-alone cause of action, but a method of imputing liability to a municipality for a constitutional violation." *Hernandez v. City of Phx.*, 541 F. Supp. 3d 996, 1003 (D. Ariz. 2021); *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation."). The Court will therefore dismiss claim 12 with prejudice. Nonetheless, the Court will consider the allegations in claim 12 in determining whether Plaintiff has plausibly alleged *Monell* liability for the remaining § 1983 claims (namely claims 1–7 and 9).

### a. Final policymaking authority

Plaintiff alleges that Sergeant Bailey and Does 1–3 are final policymakers with respect to training and disciplinary decisions for MPD law enforcement. (Doc. 76 at 100 ¶¶ 308, 310). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481–82. "The official must also be responsible for establishing final governmental policy respecting such activity before the municipality can be held liable." *Id.* at 482–83. The U.S. Supreme Court gave the example that "the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policies," and in that case, "the Sheriff's decisions respecting employment would not give rise to municipal liability." *Id.* at 483 n.12. "[W]hether an official had final policymaking authority is a question of state law," and such authority "may be granted

directly by a legislative enactment or may be delegated by an official who possesses such authority." *Id.* at 483.

Plaintiff alleges Sergeant Bailey had a supervisory role in the MPD, but he cites no state law and does not provide any other support for his assertion that Sergeant Bailey has final policymaking authority of the training and discipline of MPD law enforcement. (Doc. 76 at 37 ¶ 64). Plaintiff states that the identities of Does 1–3 "are unknown to Plaintiff," but that he will amend his complaint "if and when" their identities are ascertained. (Doc. 76 at 26 ¶ 15). Even if Plaintiff is able to identify a final policymaker, nothing in the FAC suggests that these policymakers knew of the alleged misconduct of the officers such that their decisions would amount to deliberate indifference. Accordingly, Plaintiff cannot demonstrate that a violation was committed by or ratified by an official with final policymaking authority. *See Gordon*, 6 F.4th at 974.

### b. Bad hiring practices

"Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411.

Plaintiff alleges that the City hired "underqualified or unfit individuals," and that "constitutional violations were foreseeable" because these were "positions of power." (Doc. 76 at 99–100 ¶ 304). Plaintiff further alleges the City retained Officers Higgins and Giraldo "despite actual notice of their histories of excessive force and retaliatory conduct." (Doc. 76 at 102 ¶ 315).

Aside from the threadbare assertion that the City had notice of prior excessive force and retaliatory conduct of the officers, Plaintiff does not allege any facts suggesting the officers had a history of excessive force and retaliatory conduct, or how the City had notice of such history. The history of retaliation described by Plaintiff involves different officers than the ones involved in this case (Doc. 76 at 41–42), and to the extent Plaintiff is referring

to the present civil suit (Doc. 76 at 13), the individual officers were dismissed from this action and the Court made no determination of excessive force or retaliation (Doc. 106 at 10). Thus, the FAC offers no facts that would allow the Court to draw a plausible inference that officers Higgins and Giraldo had histories of excessive force and retaliatory conduct, or that the City knew of such history when the officers were hired such that hiring the officers was the "moving force" behind the alleged injury. *See Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404. Plaintiff therefore fails to establish *Monell* liability on a theory of bad hiring practices.

### c.  Failure to train, supervise, and discipline

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654 F.3d at 900. "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Id.* (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 403). "Mere negligence in training or supervision, however, does not give rise to a *Monell* claim." *Dougherty*, 654 F.3d at 900. A plaintiff must demonstrate that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," as "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."

*Id.* at 61–62.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Plaintiff alleges a pattern of using trespass laws to target individuals in retaliation for exercising their First Amendment rights (Doc. 76 at 12–13, 100–01), which he alleges encompasses a pattern of "unconstitutional arrests" and "use of force." (Doc. 101 at ¶ 308).

In addition to the incident in this case, Plaintiff describes three separate incidents where someone was recording MPD activity and was arrested for trespassing. (Doc. 76 at 41–43 ¶¶ 81–89). Plaintiff argues that these incidents provided the city with "actual or constructive notice of these unconstitutional practices." (Doc. 76 at 13). However, Plaintiff has not alleged that a court has found any unconstitutional practices in these cases. In Plaintiff's prior case that he refers to (Doc. 76 at 41 ¶ 8), a jury found the officer not guilty for First Amendment retaliation. *See Bassford v. Newby*, CV-22-572-PHX-JAT, at Doc. 191 (D. Ariz. June 1, 2026). Plaintiff alleges that one of the individuals was found guilty of disorderly conduct and trespassing in the third degree, and the other individual was found guilty of trespassing in the third degree. (Doc. 76 at 42 ¶ 86, 43 ¶ 89).

As an initial matter, these incidents pertain only to First Amendment retaliation. Plaintiff does not allege a pattern of any other alleged constitutional violations. Moreover, although Plaintiff alleges a pattern of recording officers followed by an arrest for trespassing, none of these incidents would put the City on notice that MPD officers were engaging in unconstitutional practices because no court has determined that the arrests were in fact unconstitutional. Accordingly, Plaintiff has failed to establish *Monell* liability on the theory of failure to train or supervise.

Because Plaintiff has failed to plausibly allege *Monell* liability, and because the only remaining theory of liability as to claims 1–7 and 9 is *Monell*, the Court will dismiss claims 1–7 and 9. Next, the Court will consider whether Plaintiff could possibly amend claims 1–7 and 9 to state or claim or whether amendment would be futile.

### d. Leave to amend

#### 1. Statute of Limitations

Preliminarily, the City argues that Plaintiff's *Monell* claims are time-barred. (Doc. 107 at 5). The law is unsettled as to when a *Monell* claim accrues. *Bell v. Lee*, No. 13-cv-05820-SI, 2023 WL 5836812, at *3 (N.D. Cal. Sep. 8, 2023); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *Ofodrinwa v. Kizzar*, No. 3:24-cv-00463-HZ, 2024 WL 3510963, at *6 (D. Or. July 23, 2024) (noting "the uncertain state of law as to when a *Monell* claim accrues").

> As one district court has recently noted, "The question of when a *Monell* claim accrues turns out to be a thornier issue than one might imagine." *Boyer v. Clinton Cty. Sheriff's Off.*, —— F. Supp. 3d ——, No. 22-cv-212, 2022 WL 17552242, at *5 (S.D. Ohio Dec. 9, 2022). "Lower courts have divided into two camps. In the first, courts hold that a *Monell* claim accrues when the underlying conduct giving rise to potential *Monell* liability occurred." *Id.* (collecting cases). "In the second camp, courts follow what they often call a 'delayed accrual' theory.... Under this theory, a *Monell* claim does not accrue until a plaintiff is at least on inquiry notice that the conduct the plaintiff experienced is part of some pattern or practice sufficient to give rise to *Monell* liability." *Id.* (collecting cases). The Ninth Circuit has not addressed this question. *See Marlowe v. City & Cty. of San Francisco*, 753 F. App'x 479 (9th Cir. 2019) (declining to address whether a *Monell* claim accrues upon the incurring of the injury or when the plaintiff knew or reasonably should have known that an official custom or policy caused the injury); *see also Caples v. City of Phoenix*, 804 F. App'x 595 (9th Cir. 2020) (same).

*Bell,* 2023 WL 5836812, at *2.

This Court agrees with the cases holding that a *Monell* claim accrues when the underlying conduct giving rise to potential *Monell* liability occurred.  To hold otherwise would mean that whenever Plaintiff might discover a relevant custom or policy in the future (perhaps through a newspaper article or word of mouth) his statute of limitations for his *Monell* claims would start running at that time (assuming he could show reasonable diligence).  This Court finds that the better reading of the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), leads to the conclusion that once Plaintiff knows he is wronged, the statute of limitations begins to run.  *Id*. at 391 ("Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues

- 18 -

even though the full extent of the injury is not then known or predictable.") (quotation omitted).

Regarding the statute of limitations in this case,

> For Section 1983 claims, federal courts apply the statute of limitations applicable to state-law personal-injury claims in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011). "In Arizona, personal-injury claims are subject to a two-year statute of limitations, so [Keim] had two years once [her] claims accrued to file them." *See Barlow v. Arizona*, 2021 WL 2474607, at *5 (D. Ariz. 2021), *aff'd*, 2022 WL 418957 (9th Cir. 2022) (per curiam) (mem. decision).
> Although the state-law statute of limitations applies to Section 1983 claims, "[f]ederal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.*

*Keim v. City of Mesa*, No. CV-24-01182-PHX-SHD, 2025 WL 2444074, at *2–3 (D. Ariz. Aug. 25, 2025).

Here, it is undisputed that all facts giving rise to claims 1–4, 6–7 and 9 occurred between March 2, 2022 and March 3, 2022. This case was filed on March 28, 2025. The statute of limitation for § 1983 claims is two years from the injury. Plaintiff knew of all of his alleged injuries as to claims 1–4, 6–7 and 9 by March 3, 2022. Accordingly, all of Plaintiff's § 1983 *Monell* claims are barred by the statute of limitations because they were not filed within two years of when they accrued.

### 2. *Claims 1–7 and 9*

Claim 1 alleges a § 1983 First Amendment retaliation claim. (Doc. 76 at 54–62). "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019). As discussed above, Plaintiff failed to allege a viable *Monell* theory of liability for this claim. Further, this claim is barred by the statute of limitation; therefore, any amendment would be futile. As a result, claim 1 is dismissed with prejudice.

Claim 2 alleges a Fourth Amendment unlawful arrest and seizure claim under

- 19 -

§ 1983. (Doc. 76 at 62–65). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). As previously explained, the facts alleged in the FAC establish that the officers had probable cause to arrest Plaintiff for trespass in the third degree under Arizona law. Further, this claim is barred by the statute of limitations.  Therefore, because amendment would be futile, claim 2 is dismissed with prejudice.

Claim 3 alleges a § 1983 Fourth Amendment excessive force claim. (Doc. 76 at 65–67). Excessive force claims ask "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (cleaned up). As discussed above, Plaintiff failed to allege a viable *Monell* theory of liability for this claim. Further, this claim is barred by the statute of limitation; therefore, any amendment would be futile.  As a result, claim 3 is dismissed with prejudice.

Claim 4 alleges a Fourth Amendment false imprisonment claim under § 1983. (Doc. 76 at 67–68). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For the reasons explained as to claim 2, claim 4 is dismissed with prejudice.

Claim 5 alleges a § 1983 Fourth Amendment malicious prosecution claim. (Doc. 76 at 69–70). A Fourth Amendment malicious prosecution claim requires the plaintiff to show lack of probable cause. *Thompson v. Clark*, 596 U.S. 36, 42–44 (2022). As previously explained, the facts alleged in the FAC establish that the officers had probable cause to arrest Plaintiff for trespass in the third degree under Arizona law. Therefore, because amendment would be futile, claim 5 is dismissed with prejudice.

Claim 6 alleges a § 1983 claim for deprivation of Plaintiff's "right to self-representation" in the criminal case against him under the Sixth and Fourteenth Amendments. (Doc. 76 at 71–72). The Sixth Amendment guarantees criminal defendants a right to self-representation at trial. *Martinez v. Ct. of App. of Cal., Fourth Appellate Dist.*,

528 U.S. 152, 154 (2000); *see Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007) (noting that "a defendant's request for self-representation [must] be unequivocal, timely, and not for purposes of delay"). Plaintiff alleges that his rights were violated when he was forced to enter a plea before receiving the facts or evidence against him (Doc. 76 at 71 ¶ 195), and when he was assigned counsel without request or consent (Doc. 76 at 71 ¶ 197).

The remedy for such a violation is a new trial. *See United States v. Engel*, 968 F.3d 1046, 1052 (9th Cir. 2020) ("A violation of a defendant's Sixth Amendment right to self-representation is structural error."); *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984); *United States v. Rice*, 776 F.3d 1021, 1025 (9th Cir. 2015) ("The Supreme Court has found denial of the right of self-representation to be structural error because it deprives a defendant a fair chance to present his case in his own way, thus undermining the fairness of a criminal proceeding as a whole." (internal quotations and citations omitted)); *United States v. Glessner*, 1 F. App'x 648, 649 (9th Cir. 2001) ("Glessner's Sixth Amendment right to counsel having been violated, the judgment must be reversed and the conviction vacated. Ordinarily we would remand for a new trial. However, because Glessner has served most of his sentence, a new trial would be inappropriate and government counsel advised the court at argument that no new trial would be sought. Accordingly, we remand with directions to promptly release Glessner and dismiss the charges against him."). However, Plaintiff did not enter a plea deal, and the criminal case against Plaintiff was dismissed pursuant to A.R.S. § 12-751. (Doc. 115). Therefore, claim 6 presents no claim for relief that this Court can grant. Accordingly, claim 6 is dismissed with prejudice.

Claim 7 alleges violations of Plaintiff's Fifth and Fourteenth Amendment rights under § 1983 against various court defendants. (Doc. 76 at 72–75). Because claim 7 does not allege a claim against the City, claim 7 is dismissed with prejudice as against the City.

Claim 9 alleges a Fourteenth Amendment Equal Protection Clause claim under § 1983 against the City for "enforcing laws, prosecuting offenses, and engaging in arrests" in a retaliatory manner. (Doc. 76 at 85 ¶ 256). An equal protection claim brought by a "class of one" can prevail "where the plaintiff alleges that she has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges that the officers treated him differently than other individuals at the scene, who were "allowed to stand and watch" the investigation without being asked to back up or leave. (Doc. 76 at 84 ¶ 252). However, Plaintiff alleges that the other individuals "passed between [him and the officers] and briefly stopped to observe the situation before they entered [the store]." (Doc. 76 at 32 ¶ 39). Moreover, no other individuals were asked to leave, and therefore the officers cannot be said to have selectively enforced the trespass law against Plaintiff as no other individuals had violated the statute. *See Awadby v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004) ("[Plaintiff's] allegations should not be confused with a selective prosecution claim, for he is not claiming that the defendants prosecuted him under a facially neutral law in a discriminatory manner."). Based on the facts in the FAC, the City, as a matter of law, had a rational law enforcement safety basis for the difference in treatment. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1047 (9th Cir. 2002) (recognizing that "ensuring safety of arresting officers" is a legitimate governmental interest); *Gallinger v. Becerra*, 898 F.3d 1012, 1018 (9th Cir. 2018) (describing "officer or public safety" as a recognized government interest). Further, this claim is barred by the statute of limitations. Therefore, claim 9 is dismissed with prejudice.

## C. RICO Claims

Claims 10 and 11 arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. (Doc. 76 at 87–98). "To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citation and internal quotation marks omitted). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act indictable under certain enumerated federal criminal statutes." *Donahoe*, 869 F. Supp. 2d at 1052. "Civil rights violations . . . do not fall within the statutory definition of 'racketeering activity.'" *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). Moreover,

the Ninth Circuit Court of Appeals has held that "'government entities are incapable of forming [the] malicious intent' necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991)). Accordingly, Plaintiff's RICO claims (claims 10 and 11) against the City are dismissed with prejudice.

### D. Other Claims

#### i. Claim 23

Claim 23 alleges psychological torture in violation of the Universal Declaration of Human Rights ("UDHR"), the International Covenant on Civil and Political Rights ("ICCPR"), and the Covenant Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). (Doc. 76 at 130 ¶ 438).

Plaintiff fails to state a viable claim under international law. "For any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing." *Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 856 (9th Cir.2007). The ICCPR and UDHR are not self-executing and do not create judicially enforceable private rights. *Serra v. Lappin*, 600 F.3d 1191, 1197 & n.5 (9th Cir. 2010). The CAT is also not self-executing and does not create judicially enforceable individual rights for the types of claims Plaintiff asserts. *Renkel v. United States*, 456 F.3d 640, 644 (6th Cir. 2006); *Raffington v. Cangemi*, 399 F.3d 900, 903 (8th Cir. 2005); *Davis v. Folsom Cordova Unified Sch. Dist.*, 674 F. App'x 715, 718 (9th Cir. 2017) ("The Convention Against Torture is also inapplicable because, among other reasons, it applies only to conduct occurring 'outside [of] the United States.'" (quoting 18 U.S.C. § 2340A(a))). Accordingly claim 23 is dismissed with prejudice.

#### ii. Claim 24

Claim 24 alleges a violation of "customary international law." (Doc. 76 at 132 ¶ 445). The Alien Tort Statute ("ATS") "is the only possible vehicle" for such a claim "because no other statute recognizes a general cause of action under the law of nations." *Serra*, 600 F.3d at 1198; *but see Cisco Sys., Inc. v. Doe I*, 609 U.S. ---, 2026 WL 1791225,

at *3 (June 3, 2026) ("[W]e close the door that *Sosa* cracked and hold that courts may not create new causes of action for violations of international norms."). Plaintiff concedes that the Alien Tort Statute ("ATS") does not apply to him because he is not an alien. (Doc. 76 at 133 ¶ 450); *Serra*, 600 F.3d at 1198 ("The scope of the ATS is limited to suits 'by an alien.'" (quoting 28 U.S.C. § 1350)). "This claim fails because customary international law is not a source of judicially enforceable private rights in the absence of a statute conferring jurisdiction over such claims." *Serra*, 600 F.3d at 1197. Accordingly, claim 24 fails to state a claim and is dismissed with prejudice.

iii.    <u>Claim 25</u>

Claim 25 seeks declaratory relief that placing the same procedural expectations on pro se litigants and government defendants represented by counsel creates an unconstitutional structural imbalance. (Doc. 76 at 133–34). However, there is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). Moreover, the City is not the proper defendant in a challenge to federal court procedures. Therefore, claim 25 is dismissed with prejudice.

### IV.    MOTION FOR RECONSIDERATION

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for

reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. See *Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

The Court's February 11, 2026 Order dismissed individual Defendants Officer Higgins, Officer Giraldo, and Sergeant Bailey for insufficient service of process. (Doc. 106 at 8–9). As explained in the February 11, 2026 Order, under Rule 4(m), the plaintiff must serve a defendant with a summons and a copy of the complaint within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). If the plaintiff fails to do so, the court must either dismiss the complaint without prejudice against that defendant or order that service be made within a specified time. *Id.* "Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).

The February 11, 2026 Order explained that "[b]y failing to respond to Defendants' Motion to Dismiss, Plaintiff has failed to show good cause for a further extension of time for service or excusable neglect for his failure to effect proper service." (Doc. 106 at 9). Plaintiff argues that this was clear error because Plaintiff substantively challenged the Defendants' arguments in his Motion to Strike (Doc. 83) by "specifically assert[ing] that Defendants failed to provide competent proof of improper service." (Doc. 109 at 3). However, neither the Motion to Strike nor Motion for Reconsideration present an argument as to good cause or excusable neglect, and therefore Plaintiff has not satisfied his burden of showing good cause or excusable neglect.

Plaintiff next argues that the Court erred in declining to extend the time for service because the individual Defendants had actual notice. (Doc. 109 at 3–4). When exercising its discretion to extend the time for service, the Court may consider such factors as

"prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (internal quotations and citation omitted). But a district court retains "broad discretion to either grant an extension of time, or to dismiss an action entirely, for failure to effect service." *Jones v. Automobile Club of Southern Cal.*, 26 F. App'x 740, 742 & n.7 (9th Cir. 2002) (citing *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001)).

The Court's February 11, 2026 Order explained that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (internal quotation marks and citation omitted). "However, '[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.'" *Id.* (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). The Court acknowledged that the individual Defendants "had actual notice of the lawsuit," but explained that service by mail was not "substantial compliance" with Rule 4, "particularly where Plaintiff knew how to effect proper service, as he did on the City of Mesa." (Doc. 106 at 9). Therefore, the Court did not err in its consideration of actual notice.

Plaintiff additionally argues that the Court erred in failing to consider prejudice he would suffer if denied relief. (Doc. 109 at 5). However, the Court's denial of an extension of time for service would not prejudice Plaintiff because even if the Court granted an extension of time for service, the claims against the individual officers are subject to dismissal with prejudice.

As explained in this Order, claims 13–18, 20, and 21 are time-barred under A.R.S. § 12-821.01 and would be dismissed with prejudice. Claims 22–25 do not state a valid cause of action and would be dismissed with prejudice. And because the individual officers are City employees, § 1983 conspiracy (claim 8) is improper for the same reasons as against the City and thus would be dismissed with prejudice.

Claim 19 alleges a state law malicious prosecution claim, and claim 5 alleges a

§ 1983 Fourth Amendment malicious prosecution claim. Lack of probable cause is an element for both claims. *See Cullison*, 120 Ariz. at 169; *Thompson v. Clark*, 596 U.S. 36, 42–44 (2022). As explained in this Order, the facts alleged by Plaintiff in the FAC establish probable cause, and therefore Plaintiff's malicious prosecution claims fail as a matter of law. Claims 5 and 19 would thus be dismissed with prejudice. Additionally, claims 2, 4, 6, 7, and 9 would be dismissed as against the individual officers for the same reasons explained earlier in this Order.

Claims 1 and 3 are time-barred as to the individual officers and would therefore be dismissed with prejudice. Claims 2, 4, and 9 are also time-barred.

As discussed above, "Federal courts in § 1983 actions apply the state statute of limitations from personal-injury claims and borrow the state's tolling rules." *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018); *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Felder v. Casey*, 487 U.S. 131, 134 (1988) (holding that state notice of claim statute does not apply to § 1983 claims because the state law requirements "are pre-empted as inconsistent with federal law"). The statute of limitations for personal injury claims in Arizona is two years after the cause of action accrues. A.R.S. § 15-542; *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004); *Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir. 1986). Plaintiff filed this action on March 28, 2025. (Doc. 1). Therefore, any claim that accrued prior to March 28, 2023 is untimely.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. "[U]nder federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)); *Wallace*, 549 U.S. at 388 (noting a claim accrues when a plaintiff has a complete and present cause of action and can file suit and obtain relief).

Claim 1 alleges a § 1983 First Amendment retaliation claim. (Doc. 76 at 54–62). First Amendment retaliation claims accrue when the plaintiff knows or has reason to know

of the injury which is the basis of the action. *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022) ("We have likewise applied the traditional accrual rule to § 1983 claims alleging First Amendment violations, including First Amendment retaliation."). Plaintiff alleges that when he was asked to leave, he stated that "he was exercising his right to film the officers in the official capacity," and that the "request to leave was an unlawful request that is subject to a suit." (Doc. 76 at 33 ¶ 46). By his allegations, Plaintiff knew of the alleged retaliatory motive at the time of the arrest on March 2, 2022, and thus claim 1 accrued on March 2, 2022 and is untimely. Claim 1 as against the individual officers would therefore be dismissed with prejudice.

Claim 2 alleges a Fourth Amendment unlawful search and seizure claim under § 1983. (Doc. 76 at 62–65). "For Fourth Amendment violations, 'federal law holds that a cause of action for illegal search and seizure accrues when the wrongful act occurs . . . even if the person does not know at the time that the search was [unlawful].'" *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022) (quoting *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015)); *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017) ("In a traditional Fourth Amendment case, the plaintiff is placed on constructive notice of the illegal conduct when the search and seizure takes place."). Plaintiff's Fourth Amendment unlawful search and seizure claim thus accrued on March 2, 2022 when the arrest took place and is therefore untimely. Accordingly, claim 2 would be dismissed with prejudice.

Claim 3 alleges a § 1983 Fourth Amendment excessive force claim. (Doc. 76 at 65–67). Plaintiff alleges that the officers used excessive force in arresting him on March 2, 2022. (Doc. 76 at 65 ¶ 164). Excessive force claims accrue on the date the excessive force is used. *See Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994) (finding § 1983 Fourth Amendment excessive force claim accrued at the time of arrest); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998) (same); *Estate of Jackson v. City of Modesto*, No. 1:21-CV-0415 AWI EPG, 2021 WL 4819604, at *7 (E.D. Cal. Oct. 14, 2021) ("Courts recognize that excessive force claims generally accrue on the date that the

excessive force is used against an individual."). Therefore, Plaintiff's excessive force claim is untimely. Claim 3 would thus be dismissed with prejudice.

Claim 4 alleges a Fourth Amendment unlawful imprisonment under § 1983. (Doc. 76 at 67–68). For false imprisonment claims, the statute of limitations begins to run "when the alleged false imprisonment ends." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (quotation marks and citation omitted). Plaintiff was held in custody overnight and was released on March 3, 2022. (Doc. 76 at 36 ¶ 62, 37 ¶ 66, 112 ¶ 357). Accordingly, Plaintiff's Fourth Amendment unlawful imprisonment claim accrued on March 3, 2022, when his alleged false imprisonment ended, and is therefore untimely. Claim 4 would thus be dismissed with prejudice.

Claim 9 alleges a Fourteenth Amendment Equal Protection Clause claim under § 1983. Plaintiff alleges that the officers treated him differently than other individuals at the scene. (Doc. 76 at 84 ¶ 252). Plaintiff's equal protection claim thus accrued on March 2, 2022. *See Yasin v. Coulter*, 449 F. App'x 687, 690 (9th Cir. 2011) ("Unlike a claim for malicious prosecution, an equal protection claim does not require, as an essential element, the termination of the criminal proceedings in the accused's favor."). Claim 9 is therefore untimely and would be dismissed with prejudice.

Therefore, the Court did not err in declining to extend time for service. Plaintiff's Motion for Reconsideration (Doc. 109) is denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to Dismiss (Doc. 107) and Plaintiff's Motion for Reconsideration (Doc. 109).

(2) Plaintiff's Motion for Reconsideration (Doc. 109) is **denied**.

(3) Defendant City of Mesa's Motion to Dismiss (Doc. 107) is **granted**.  The Clerk of the Court shall enter judgment accordingly.

Dated this 14th day of July, 2026.

James A. Teilborg
Senior United States District Judge